IN THE 252nd, CRIMINAL DISTRICT COURT
FOR THE COUNTY OF JEFFERSON
STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 13 2015

Abel Acosta, Clerk

JAMES ISHMAEL TIBBS

-Vs.-                          Cause No. 21560

THE STATE OF TEXAS

APPLICATION FOR WRIT

To: THE HONORABLE JUDGE WEST OF THE ABOVE SAID COURT.

Comes now, JAMES ISHMAEL TIBBS,..pursuant to Artical I, Sec.
10, Clause 1, of the U.S.C.A. -(no state...shall pass any bill of
attainder, ex post facto law, or law impairing the Obligation Of So
Contracts;..

Derek J.T. Adler,..explaning that"the term'ex post facto law
would literally refer to any law...which gives legal consequences
to actions or events that took place before the date of its...
passage"..

Ogden,25 U.S. at 266,..explaining that'the states are forbidd
en to pass any..ex post facto law, by which a man shall be punishe
criminally or penally, by loss of life, of his liberty, property, for
an act, which, at the time of its commission, violated no existing l
law of the land"..

...Specifically...

A persons trial ends June 3rd, 1994,..under the laws that were
in effect the Judgment, Conviction, Sentance and Punishment was ove
Complete,.SEX OFFENDER REGISTRATION C.C.P. art.62.102,..was not i
in effect untill Sept.1st, 1997,.it only applied to a person who
was eligable under applicable state law,..Therefore Applicant is
not eligable, because this law was not in effect, it violates the
U.S.C.A. ex post facto and bill of attander Clause,...Sawyer V.
Whitly,112 Sct.2514,...Double Jeopardy Attaches,.because Multiple
Prosecutions for the same offence,..a person who was tried convic
ted, sentanced and punished the Judgment held the new laws provisi
ons that were Adjudicated,.because of that;..the Judge Ordered
a person to comply with .Sex Offinder Registration,C.C.P. Artical
62.102, Provisions,..Failure to Comply where that law is applicabl
did not Require Indictment,.because the court Orders Failure to
Comply was CUREABLE and they were only arrested for a Capious
Profine or Contempt of Court Order,..NOT A 25 to LIFE SENTANCE
TO PRISON FOR THREE STRIKES FELONY CONVICTION..which is a CLOSED
DOOR to the only Defence Avaliable A FIRST FEDERAL CLAIM OF ACTUA
INNOCENCE, see cf Lonkar V Thomas, 116 Sct. 1293,..First Federal
Claim Of Actual Innocence,.GATE-WAY-EXCEPTION,.where Schulp V.
Delo,115 Sct.851,...no single juror acting rationally would lack
a reasonable doubt,...or vote to convict ,.is an AQUITTAL the end
RESULT

1.

It is outside an assment as to whether no single juror laked a reasonable doubt,..because an Aquittal is clearly defined in the GATE-WAY-EXCEPTION,Actual Innocence Acception For Procedural Bar On A First Federal Claim,...Exhibit (A)..a Subpoina was sereved on Buellas Tibbs Grisham,.However; she was not Present for Trial,and her testimony was required as a Matter of law,... because it was favorable to Defence,Because;..the D.A. KNEW that the ..SYNOPSIS OF OFFENSE..is false and that both of her children had motives,and she was interviewed by (CPS)-Agents,NOVEMBER 30th 1989,..Applicant was interviewed,..Bonnie,and Damiens punititave confession to (CPS) was the reason she lied about being sexually assaulted was because Applicant slapped JACK,..I,admitted to the accusation of slapping JACK the younges boy,..Applicant has been denied Brady material that had the jury heared,..it is more likle than not no single juror would lack reasonable doubt,or voted to convict,....,,

Applicant,JAMES ISHMAEL TIBBS, swears under penalty of perjury in compliance with 28 U.S.C.A. 1746 that the foregoing claims are true and correct.

    state Of texas
    County of Jefferson

        Swornto and subscribed on this,11th,day of May 2015

<span style="margin-left:auto"></span>*James Ishmael Tibbs*
                        Affiant
                   James Ishmael Tibbs
                   3955 Rothwell Str,
                   Beaumont,Texas 77705

...Relief...

    The  trial Court to SUBPOENA Buellas Tibbs Grisham for a jury trial,or a hearing to resolve the issue of whether a reasonable doubt exzisted,under the Actual Innocence Acception, or the Brady V. Maryland,suppression of favorable evidence to Applicant,....

    Also whether the ex post facto law is offended....and as to whether in this particular case double jeopardy Attaches?

                        RESPECTFULLY SUBMITTED

*James Ishmael Tibbs*
                   James Ishmael Tibbs


                        2.

EXHIBIT (A)

THE STATE OF TEXAS vs.

JAMES TIBBS

CAUSE NO. 55387
60405

IN THE
(X) Criminal District Court
( ) 252nd District Court
( ) Court at Law No. _____
Jefferson County, Texas

## APPLICATION FOR SUBPOENA

COMES NOW (X) the State; ( ) the Defendant and makes SWORN application for the issuance of a subpoena for each of the following witnesses whose Testimony is material.

| WIT.# | NAME | ADDRESS | OTHER INFORMATION |
|---|---|---|---|
| 1. | BUELLAS GRISHAM | P.O. BOX 783 SOURLAKE, TEXAS | |
| 2. | " | | |
| 3. | | | |
| 4. | | | |
| 5. | PLEASE CONTACT ASSISTANT DISTRICT ATTORNEY W. C. RADFORD, JR. IMMEDIATELY UPON RECEIPT OF THIS SUBPOENA DIAL 835-8550 or 727-2191 ext. 8550 | | |
| 6. | | | |

5/6/94
DATE

ATTORNEY (SIGN & PRINT NAME)
W. C. RADFORD, JR.

SWORN AND SUBSCRIBED Before me on this the 6th day of MAY 1994

EDITH MARY SMITH
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 21, 1996

NOTARY PUBLIC in and for the STATE OF TEXAS

### SUBPOENA

TO ANY PEACE OFFICER OR OTHER AUTHORIZED PERSON OF JEFFERSON ( ) COUNTY, TEXAS:

YOU are hereby commanded to summon the witness(es) listed above to appear before the Court and remain from day to day until discharged by the Court. HEREIN fail not and make due return by showing how you executed this same. A disobedience of this subpoena is punishable under the Code of Criminal Procedure.

WITNESS my official signature on 5/6/94

John S. Appleman, DISTRICT CLERK

By _____ Deputy

INSTRUCTIONS TO WITNESS:
THE WEEK OF
This case has been set on the MAY 31, 1994 Trial Docket.
1. DO IMMEDIATELY CONTACT THE ABOVE NAMED ATTORNEY.
2. DO NOT COME to Court until instructed to do so by the ATTORNEY.
If you move or have any questions, call the Witness Coordinator Monday-Friday, 8:00 a.m. - 5:00 p.m., Telephone (409)835-8614 or (409)727-2191, Ext. 8614.
3. FAILURE TO APPEAR when instructed will result in a warrant being issued for your arrest.

### OFFICER'S RETURN

This order was executed by delivering a copy of this subpoena to the following:

| WIT.# | DATE SERVED | REASON UNSERVED | WIT.# | DATE SERVED | REASON UNSERVED |
|---|---|---|---|---|---|
| 1. | 5-9-94 | | 4. | | |
| 2. | | | 5. | | |
| 3. | | | 6. | | |

By _____ Deputy

EXHIBIT (A)

# Journal of Criminal Law and Criminology

| Volume 91 | Article 4 |
| Issue 2 *Winter* | |

Winter 2001

# It's an Ex Post Fact: Supreme Court Misapplies the Ex Post Facto Clause to Criminal Procedure Statutes

Danielle Kitson

Follow this and additional works at: http://scholarlycommons.law.northwestern.edu/jclc

 Part of the Criminal Law Commons, Criminology Commons, and the Criminology and Criminal Justice Commons

## Recommended Citation

Danielle Kitson, It's an Ex Post Fact: Supreme Court Misapplies the Ex Post Facto Clause to Criminal Procedure Statutes, 91 J. Crim. L. & Criminology 429 (2000-2001)

This Supreme Court Review is brought to you for free and open access by Northwestern University School of Law Scholarly Commons. It has been accepted for inclusion in Journal of Criminal Law and Criminology by an authorized administrator of Northwestern University School of Law Scholarly Commons.

0091-4169/01/9102-0429
THE JOURNAL OF CRIMINAL LAW & CRIMINOLOGY
Copyright © 2001 by Northwestern University, School of Law

Vol 91, No 2
Printed in USA

# IT'S AN EX POST FACT: SUPREME COURT MISAPPLIES THE EX POST FACTO CLAUSE TO CRIMINAL PROCEDURE STATUTES

## Carmell v. Texas, 120 S. Ct. 1620 (2000)

## I. INTRODUCTION

In *Carmell v. Texas*,[1] the Supreme Court held that the Ex Post Facto Law Clause of the United States Constitution[2] prohibited the application of a Texas statute of criminal procedure[3] in trials against sexual offenders for their offenses committed prior to the amendment of the statute in 1995.[4] The Court reasoned that the amendment to the Texas statute altered the sufficiency of the evidence needed to convict criminal defendants, and thus it qualified as an ex post facto law as such under the seminal case of *Calder v. Bull*.[5] In particular, the court was persuaded that the facts of *Carmell* mirrored the 300 year-old case of Sir John Fenwick, the same case that Justice Chase cited in *Calder*[6]

---

[1] 120 S. Ct. 1620 (2000).

[2] U.S. CONST. art. I, § 10, cl. 1. ("No state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . .").

[3] The Statute authorized conviction of sexual offenses on a victim's testimony alone, under certain conditions. *See* TEX. CODE CRIM. P. ANN. art. 38.07 (West 2000) (providing that a conviction "is supportable on the uncorroborated testimony of the victim of a sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred," or if "the victim was younger than 18 years of age at the time of the alleged offense.")

[4] *See Carmell*, 120 S. Ct. at 1643 (holding that petitioner's convictions pursuant to Article 38.07 could not be sustained under the Ex Post Facto Law Clause).

[5] *See id.* at 1625, 1631 (reasoning that "Article 38.07 is unquestionably a law 'that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."); Calder v. Bull, 3 U.S. 386, 390 (1798) (noting that "every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender," is an ex post facto law).

[6] 3 U.S. at 389.

for the proposition that statutes altering the sufficiency of the evidence needed to convict were invalid ex post facto laws.[7]

This Note argues that the Supreme Court's decision was incorrect. First, the majority incorrectly found that Texas Article 38.07 altered the sufficiency of the evidence needed to obtain a conviction.[8] Instead, Texas Article 38.07 is functionally identical to rules of witness competency, and is not ex post facto as such under the principles of *Calder*.[9] Second, the Court erroneously analogized the facts of John Fenwick's case to Carmell's situation.[10] Finally, even if the majority were correct in its assertion that Texas Article 38.07 qualifies as an ex post facto law as defined in *Calder*,[11] the majority ignored subsequent case law that effectively reinterpreted the *Calder* definition, to the exclusion of *Calder*'s fourth category of ex post facto laws, those which alter the legal rules of evidence.[12]

## II. BACKGROUND

### A. HISTORY AND PURPOSE OF THE EX POST FACTO CLAUSE

Article I, Section 10, clause 1 of the United States Constitution provides that "no state shall . . . pass any bill of attainder, ex

---

[7] *See Carmell*, 120 S. Ct. at 1629, 1631 (noting that "the circumstances of petitioner's case parallel those of Fenwick's case 300 years earlier").

[8] *See id.* at 1648 (Ginsburg, J., dissenting) (arguing that the majority "places . . . its greatest weight on the 'sufficiency of the evidence' label," a label that "will not stick").

[9] *See id.* at 1649 (Ginsburg, J., dissenting) (reasoning that "the corroboration requirement of Article 38.07 is functionally identical to a conditional rule of witness competency").

[10] *See id.* at 1654 (Ginsburg, J., dissenting) (reasoning that the facts of the petitioner's are distinguishable from the facts of Fenwick's case).

[11] 3 U.S. at 390 (writing for the majority, Justice Chase explained that there were four categories of ex post facto laws:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

The fourth category is at issue in *Carmell*).

[12] *See id.; Carmell*, 120 S. Ct. at 1651 (Ginsburg, J, dissenting) (reasoning that the *Calder* definition had been changed, and that "a strong case can be made that . . . [the Court] pared the number of *Calder* categories down to three, eliminating altogether the fourth category ").

post facto law, or law impairing the obligation of contracts."[13] The framers of the Constitution drafted this clause in order to restrain State legislatures from acts of injustice against citizens, in both criminal and civil matters.[14] In particular, the framers were concerned with the power of the Parliament of Great Britain to pass bills of attainder and bills of "pains and penalties" specifically against individuals or classes of individuals. Bills of attainder imposed a sentence of death and bills of pains and penalties imposed lesser punishment.[15] The framers were concerned that bills of attainder violated the principle of separation of powers. When a legislature passed a bill of attainder, the legislature passed judgment on an individual. The framers considered this act to be "an exercise of judicial power."[16]

Literally, the prohibition against ex post facto laws encompasses any law with a retrospective application, that is, any law applying "after the fact."[17] At the very heart of this prohibition is the notion that a citizen cannot be deprived of life, liberty, property, or reputation for an act which, at the time it was committed, did not violate any law.[18] As the Court noted in *Ogden v. Saunders*,[19] "laws of this character are oppressive, unjust, and tyrannical; and, as such, are condemned by the universal

---

[13] U.S. CONST. art. I, § 10, cl. 1.

[14] It is important to note that the clause includes three categories of impermissible laws: bills of attainder, ex post facto laws, and laws impairing the obligation of contracts. The first two deal with criminal matters; the third with civil matters. *See* Ogden v. Saunders, 25 U.S. 213, 216 (1827) (explaining that the framers prohibited bills of attainder and ex post facto laws "in order to restrain the State legislatures from oppressing individuals by arbitrary sentences, clothed with the forms of legislation, and from making retrospective laws applicable to criminal matters").

[15] *See Calder*, 3 U.S. at 389.

[16] *Id.*

[17] *See id.* at 390 (reasoning that the literal meaning of ex post facto is "only, that a law shall not be passed concerning, and after the fact, or thing done, or action committed"); Derek J.T. Adler, *Ex Post Facto Limitations on Changes in Evidentiary Law: Repeal of Accomplice Corroboration Requirements*, 55 FORDHAM L. REV. 1191, 1192 (1987) (explaining that the term "ex post facto law" would "literally refer to any law . . . which gives legal consequences to actions or events that took place before the date of its passage").

[18] *Ogden*, 25 U.S. at 266 (explaining that "the States are forbidden to pass any . . . ex post facto law, by which a man shall be punished criminally or penally, by loss of life, of his liberty, property, or reputation, for an act which, at the time of its commission, violated no existing law of the land").

[19] *Id.*

sentence of civilized man."[20]   The Court recognized in *Calder* that entrusting State and Federal legislatures with such power was contrary to the core concept of free Republican government, in which men enter into society willingly in order to form a social compact.[21] As Justice Chase explained, "this fundamental principle flows from the very nature of our free Republican governments, that no man should be compelled to do what the laws do not require; nor to refrain from acts which the laws permit."[22] The framers of the Constitution infused a great deal of power into the federal legislature, but also left a great deal of power to the state legislatures to "enjoin, permit, forbid, and punish; . . . declare new crimes; and establish rules of conduct for all . . . citizens in future cases; . . . [and] command what is right, and prohibit what is wrong."[23] However, the framers did not entrust the federal or the state legislatures with the power to "change innocence into guilt; or punish innocence as a crime; or violate the right of an antecedent lawful private contract; or the right of private property."[24]

Commentators have noted that the Ex Post Facto Clause in the Constitution serves three main functions.[25] First, it provides notice to the public "to assure that legislative acts give fair warning of their effect."[26] Second, it protects the right of citizens to reasonably rely on existing laws in choosing what actions to take, without fear that the laws will be changed capriciously or mali-

---

[20] *Id.* ("[T]he injustice and tyranny which characterizes ex post facto laws, consists altogether in their retrospective operation, which applies with equal force, although not exclusively, to bills of attainder.").

[21] *See Calder,* 3 U.S. at 388; Wayne A. Logan, *The Ex Post Facto Clause and the Jurisprudence of Punishment,* 35 AM. CRIM. L. REV. 1261, 1275 (1998) (noting that "James Madison proclaimed that 'ex post facto laws . . . are contrary to the first principles of the social compact, and to every principle of sound legislation").

[22] *Calder,* 3 U.S. at 388.

[23] *Id.*

[24] *Id.*

[25] *See* Adler, *supra* note 17, at 1196-97; David S. Matteo, *Welcome to Anytown, U.S.A.— Home of Beautiful Scenery (and a Convicted Sex Offender): Sex Offender Registration and Notification Laws in E.B. v. Verniero,* 43 VILL. L. REV. 581, 595 (1998); Logan, *supra* note 21, at 1276.

[26] *See* Carmell v. Texas, 120 S. Ct. 1620, 1650 (2000) (Ginsburg, J., dissenting) (quoting *Weaver v. Graham,* 450 U.S. 24, 28-29 (1981) ); Adler, *supra* note 17, at 1196. (noting that it "ensures that citizens are given fair warning of what acts will be penalized and to what extent"); Matteo, *supra* note 25, at 595; Logan, *supra* note 21, at 1276 (noting that "ex post facto laws are especially unfair because they deprive citizens of notice of the wrongfulness of behavior, and thus result in unjust deprivations").

ciously.[27] Third, it preserves the principle of separation of powers by ensuring that "legislatures do not meddle with the judiciary's task of adjudicating guilt and innocence in individual cases."[28] The ban on ex post facto laws not only prevents the legislature from adjudicating guilt and innocence for an individual, but it also prevents the legislature from acting in an arbitrary or vindictive fashion while acting in a judicial vein.[29]

## B. THE EARLY CASES: CALDER V. BULL AND CUMMINGS V. MISSOURI

The early case of *Calder v. Bull* was the first to address the Ex Post Facto Clause of the Constitution.[30] In the oft-quoted opinion written by Justice Chase, the Court explored the parameters of the Clause, and set out a four-category definition of ex post facto laws.[31] In the case of *Cummings v. Missouri*,[32] the Court first applied the fourth *Calder* category, regarding a law that "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."[33] Consideration of these two early cases is crucial to understanding which procedural provisions the Court understood to be ex post facto in nature.

*Calder v. Bull* involved a resolution passed by the legislature of Connecticut that set aside a decree of the Court of Probate of Harford.[34] The decree in question disapproved and refused to record Normand Morrison's will.[35] As a result of this legislative

---

[27] *See* Adler, *supra* note 17, at 1197; Mary-Marsha Porter Loe, *Arkansas Sexual Offender Registration and Notification Laws: An Ex Post Facto Violation?*, 53 ARK. L. REV. 175, 189 (2000) (explaining that "in order to achieve fundamental fairness, people must know the law before they act"); *Carmell*, 120 S. Ct. at 1650 (Ginsburg, J., dissenting) (*quoting* Weaver v. Graham, 450 U.S. 24, 28-29 (1981) ) (noting that the Clause "permit[s] individuals to rely on . . . [a law's] meaning until explicitly changed").

[28] *See Carmell*, 120 S. Ct. at 1650; Adler, *supra* note 17, at 1193-94 (explaining that the framers included the Ex Post Facto Clause to "uphold the separation of powers by preventing improper legislative interference in the judicial process").

[29] *See* Adler, *supra* note 17, at 1197 (explaining that the ban on ex post facto laws "prevents arbitrary or vindictive acts on the part of the legislature"); Matteo, *supra* note 25, at 595.

[30] *See* Calder v. Bull, 3 U.S. 386, 387 (1798).

[31] *See supra* note 11 (setting out the four-category definition).

[32] 71 U.S. 277 (1866).

[33] *Calder*, 3 U.S. at 390.

[34] *Id.* at 386.

[35] *Id.*

resolution, Mr. Morrison's will was probated and recorded.[36] Calder and his wife, who would have inherited the estate if the will had not been probated, as the Court of Probate had originally ordered, were disinherited.[37] Caleb Bull, whose wife was named in Mr. Morrison's will, inherited the estate.[38] Calder and his wife claimed on appeal that the legislative resolution to set aside the decree of the probate court was an ex post facto law.[39]

The Court held that the legislative decree was not an invalid ex post facto law.[40] Justice Chase reasoned that the Ex Post Facto Clause encompassed only penal statues, and that the "framers of the Constitution . . . understood and used the words in their known and appropriate signification, as referring to crimes, pains, and penalties, and no further."[41] Because Calder's case involved a civil matter, the legislative resolution could not be ex post facto under the Constitution as a matter of definition.[42] Justice Chase further explored the Ex Post Facto Clause in reaching his holding, and explained there were four types of ex post facto laws:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.[43]

In developing this definition, Justice Chase explained that he relied heavily on the works of William Blackstone and Rich-

---

[36] *See id.*

[37] *See id.* at 387.

[38] *Id.*

[39] *Id.*

[40] *See id.* at 397 (noting that ex post facto laws are limited to penal statutes: "they extend to penal statutes and no further; they are restricted in legal estimation to the creation, and, perhaps, enhancement of crimes, pains and penalties").

[41] *Id. See* Adler, *supra* note 17, at 1193 (explaining that the Ex Post Facto Clause has been interpreted to prohibit only legislative acts that operate to the detriment of a criminal defendant).

[42] 3 U.S. at 397 (noting that "ex post facto laws must be limited in the manner already expressed [to criminal statues]; they must be taken in their technical, which is also their common and general, acceptation, and are not to be understood in their literal sense").

[43] *Id.* at 390.

ard Wooddeson, as well as the definitions given in the constitutions of Maryland, North Carolina, and Massachusetts.[44]

As an example of the fourth category of ex post facto laws, Justice Chase cited briefly to the case of Sir John Fenwick in 1696.[45] The details of this case are important because the *Carmell* Court relied significantly on them in determining that laws that altered the sufficiency of evidence needed to obtain a criminal conviction were ex post facto.[46]

In Sir John Fenwick's case, an act of Parliament proclaimed that two witnesses were necessary to convict a person of high treason.[47] John Fenwick, a Jacobite, plotted with two co-conspirators to restore James II to the throne after his overthrow by King William III in the Revolution of 1688.[48] The number of conspirators expanded over the course of a few months, and the throne began arresting the conspirators one by one after three of them disclosed the restoration plot to the King.[49] The conspirators were systematically arrested, tried, convicted of treason and put to death.[50]

When Fenwick was eventually arrested, there were only two witnesses among the group of conspirators who could prove Fenwick's guilt, George Porter and Cardell Goodman.[51] Fenwick's wife was successful in bribing Goodman to leave the country, and under the act of Parliament, Porter's testimony alone would not be sufficient to obtain a conviction.[52]

The House of Commons reacted to Goodman's absence by passing a bill of attainder against Fenwick, nullifying the two-

---

[44] *See id.* at 391. It is important to note that none of the Constitutions cited by Justice Chase included a provision for the fourth category of *Calder.* The Massachusetts constitution provided that ex post facto laws were "laws made to punish actions done before the existence of such laws, and which have not been declared crimes by preceding laws; the Maryland Constitution provided that ex post facto laws were "retrospective laws punishing facts committed before the existence of such laws, and by them only declared criminal"; and the North Carolina Constitution provided the exact same definition as the Maryland Constitution. *Id.* at 391-92.

[45] *See id.* at 389 n.A.

[46] *See infra,* Section IVA, at 37 (discussing the majority's analogy between the facts of Carmell's case and the facts of Fenwick's case).

[47] *See* Carmell v. Texas, 120 S. Ct. 1620, 1629 (2000).

[48] *See id.*

[49] *See id.*

[50] *See id.*

[51] *See id.*

[52] *See id.* at 1630.

witness requirement in his case.[53] Sir John Fenwick was beheaded on January 28, 1697.[54] Justice Chase cited to Fenwick's case as an example of ex post facto laws falling under the fourth category, laws which alter the rules of evidence necessary to obtain a conviction.[55]

In their concurring opinions in *Calder*, Justices Paterson and Iredell provided their own definitions of ex post facto laws.[56] Neither Iredell nor Paterson discussed Justice Chase's fourth category.[57] Justice Paterson adopted the language of the state Constitutions of Maryland, North Carolina, and Massachusetts, as well as William Blackstone's description of ex post facto laws.[58] Justice Iredell provided the following definition: "[legislatures] shall not pass any ex post facto law; or, in other words, they shall not inflict a punishment for any act, which was innocent at the time it was committed; nor increase the degree of punishment previously denounced for any specific offence." In adopting the language of the state constitutions, neither Justice Iredell nor Justice Paterson made any mention of laws altering the sufficiency of the evidence needed to obtain a criminal conviction when formulating a definition of ex post facto laws.[59]

The Court did not consider the fourth *Calder* category again until sixty-eight years later, in *Cummings v. Missouri*.[60] In *Cummings*, the Court applied the fourth *Calder* category to invalidate a "test oath" imposed by the Missouri state constitution.[61] In the wake of the Civil War, Missouri's legislature implemented the oath, designed to ensure loyalty to the Union.[62] The affiant of the oath was required to deny "that he ha[d] ever 'been in armed hostility to the United States, or to the lawful authorities

---

[53] *See id.*

[54] *Id.*

[55] *See* Calder v. Bull, 3 U.S. 386, 390 n.A (1798).

[56] *See id.* at 395-400.

[57] *See id.*; *Carmell,* 120 S. Ct. at 1651 (Ginsburg, J. dissenting) (highlighting the fact that "Justices Paterson and Iredell in their own seriatim opinions gave no hint that they considered rules of evidence to fall within the scope of the Clause").

[58] 3 U.S. at 396 ("[W]hen after an action, indifferent in itself, is committed, the Legislator, then, for the first time, declares it to have been a crime, and inflicts a punishment upon a person who has committed it.").

[59] *See Carmell,* 120 S. Ct. at 1651 (Ginsburg, J., dissenting).

[60] 71 U.S. 277, 316 (1866).

[61] *Id.*

[62] *See id.*

thereof,'" or "that he ha[d] ever, 'by act or word,' manifested his adherence to the cause of the enemies of the United States, foreign or domestic . . .."[63] The Missouri constitution provided that any person who was unable to take the oath was declared incapable of holding certain offices in the state, including "'any office of honor, trust, or profit."[64] These offices included the posts of "councilman, director, or trustee, or other manager of any corporation, public or private, . . . professor or teacher in any educational institution, or in any common or other school."[65] Additionally, the constitution provided that anyone who did not take the oath could not practice law, or practice as a "bishop, priest, deacon, minister, elder, or other clergyman, of any religious persuasion, sect, or denomination."[66] Cummings, a Roman Catholic Priest, was convicted of teaching and preaching without first having taken the oath.[67] Cummings challenged the oath on the grounds that it was an invalid ex post facto law.[68]

The Court held that the test oath violated the Ex Post Facto Clause of the Constitution.[69] Justice Field, writing for the Court, adopted the *Calder* four-category formulation and reasoned that the test oath fell under the fourth category, the prohibition on laws that change the "rules of evidence by which less or different testimony is sufficient to convict than was then required."[70] Justice Field reasoned that the clauses in the test oath "subvert the presumptions of innocence, and alter the rules of evidence, which heretofore, under the universally recognized principles of the common law, have been supposed to be fundamental and unchangeable."[71] Justice Field explained that the test oath merely assumed that parties were guilty, without affording them the presumption of innocence that is embedded in our legal system.[72] In promulgating such a test oath, Justice Field argued,

---

[63] *Id.*

[64] *Id.*

[65] *Id.* at 317.

[66] *Id.*

[67] *Id.* at 316.

[68] *See id.* at 307.

[69] *Id.* at 332.

[70] *Id.* at 326.

[71] *Id.* at 328.

[72] *See id.* (noting that the clauses in the test oath "assume that the parties are guilty; they call upon the parties to establish their innocence; and they declare that such in-

the state legislature had subverted one of the great principles of "social security, to wit: that every man shall be presumed innocent until he is proven guilty."[73] Justice Field reasoned that in subverting one of the fundamental protections of the criminal justice system, the presumption of innocence, the test oath altered the rules of evidence with regard to the sufficiency of the evidence needed to convict, and that the test oath was ex post facto under the fourth *Calder* category.[74]

## C. THE COURT APPLIES THE FOURTH CATEGORY: KRING V. MISSOURI, HOPT V. UTAH, AND THOMPSON V. MISSOURI

The Court next considered the fourth category of *Calder* in 1883's *Kring v. Missouri.*[75] Shortly after *Kring,* in 1884, the Court took up the subject again in *Hopt v. Territory of Utah.*[76] In 1898, the Court also addressed the fourth category of *Calder* in *Thompson v. Missouri.*[77] These cases are important because they changed the way in which the Court regarded the fourth *Calder* category, and tested the parameters of which laws fell under the fourth category.

In *Kring,* the Court invalidated a Missouri law of criminal procedure as an invalid ex post facto law under the fourth category of *Calder.*[78] Kring was charged with first-degree murder, but, after negotiations with the prosecutor, ultimately pled guilty to second-degree murder.[79] When he was sentenced to twenty-five years in prison, Kring appealed the conviction, claiming that the prosecutor promised only a ten-year sentence.[80] The Supreme Court remanded his case for further proceedings, and Kring was then tried and convicted for first-degree murder and sentenced to death.[81]

---

nocence can be shown only in one way—by an inquisition, in the form of an expurgatory oath, into the consciences of the parties").

[73] *Id.* at 330.

[74] *See id.*

[75] 107 U.S. 221 (1882).

[76] 110 U.S. 574 (1884).

[77] 171 U.S. 380 (1898).

[78] *Kring,* 107 U.S. at 235 (explaining that the Missouri law was "clearly ex post facto").

[79] *See id.* at 222.

[80] *See id.*

[81] *See id.*

The law in Missouri at the time that Kring committed the offense provided that a criminal defendant could not be tried for first-degree murder after an accepted plea of guilty for second-degree murder was entered.[82] In 1875, after Kring committed the offense, that law was abrogated, and criminal defendants who pled guilty to second-degree murder could be tried for first-degree murder.[83]

The U.S. Supreme Court held that the application of the new law to Kring was a violation of the Ex Post Facto Clause.[84] This holding adopted the fourth category of *Calder*, and gave it a very liberal reading, noting that "any law passed after the commission of an offense which, . . .in relation to that offense, or its consequences, alters the situation of a party to his disadvantage, is an ex post facto law."[85]

In *Hopt v. Territory of Utah*, the Court limited *Kring's* somewhat expansive reading of the fourth category of *Calder*, and upheld the application of an amended statute allowing felons to testify in criminal cases.[86] The defendant in *Hopt* was convicted of first-degree murder, and his conviction was reversed by the Court of Appeals on a writ of error.[87] In his second trial, Hopt was again convicted of first-degree murder, and sentenced to death.[88] The prosecution at this second trial offered the testimony of a man who was serving a sentence for murder at the time that he testified.[89] As of the date that Hopt committed the offense, Utah law provided that convicted felons were incompetent to testify in criminal trials.[90] After the date of the homicide, but before the date of Hopt's first trial, the law was amended to allow felons to testify.[91] Hopt challenged his conviction on the

---

[82] *See id.* at 224.

[83] *See id.* at 223 (noting that the "law was abrogated, and for this reason the defendant could be tried for murder in the first degree, notwithstanding his conviction and sentence for murder in the second degree").

[84] *See id.*

[85] *Id.* at 235.

[85] 110 U.S. 574, 589 (1882)

[87] *Id.* at 575.

[83] *Id.*

[89] *See id.* at 587.

[90] *See id.*

[91] *See id.* at 588.

basis that application of the new Utah law to his case violated the Ex Post Facto Clause.[92]

The Court held that application of the new Utah law, allowing felons to testify in criminal trials, did not violate the Ex Post Facto Clause.[93] The Court reasoned that laws affecting witness competency were not ex post facto under the fourth category of *Calder*.[94] Writing for the Court, Justice Harlan explained:

> Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed, nor provide a greater punishment therefore than was prescribed at the time of its commission, nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.[95]

Justice Harlan further explained that laws of witness competency did not fall under the fourth category of *Calder* because they did not change "the quantity or degree of proof necessary to establish . . . guilt," and because they did not change the ingredients of the offense or the ultimate facts necessary to establish guilt.[96]

In *Thompson v. Missouri*, the Court again altered the test for determining whether a law fell under the fourth *Calder* category, holding that a procedural law was ex post facto if it affected a "substantial right" of the criminal defendant.[97] In *Thompson*, the defendant was convicted of first-degree murder for the killing of a priest with strychnine poison.[98] Thompson's trial centered on a prescription for strychnine that the prosecution offered as evidence against Thompson.[99] The trial court admitted letters written in Thompson's hand, allowing the jury to compare the letters to the strychnine prescription.[100] At the time that Thompson committed the offense, such letters were inadmissi-

---

[92] *See id.*

[93] *Id.* at 590.

[94] *See id.* at 589.

[95] *Id.*

[96] *Id.* at 589-90.

[97] 171 U.S. 380, 384 (1898).

[98] *See id.* at 380-81.

[99] *See id.* at 381.

[100] *See id.*

ble as a matter of law.[101] In 1895, the general assembly of Missouri passed a law providing that "comparison of a disputed writing with any writing proved . . . to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness . . . of the writing in dispute."[102] Thompson challenged the application of this new law to his case, arguing that the letters should not have been admitted.[103]

The Court held that the application of the new Missouri law did not violate the Ex Post Facto Clause.[104] The Court analyzed *Kring* and *Hopt*, and adopted the language that procedural laws were ex post facto where they "alter the situation of a party to his disadvantage."[105] The Court added, however, that the alteration must affect a "substantial right" of the criminal defendant.[106] The Court concluded that "mere modes of procedure," were not ex post facto.[107] Finally, Justice Harlan, writing for the Court, explained that the law in this case was not ex post facto because it did not "disturb the fundamental rule that the state, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence, and establish his guilt beyond a reasonable doubt."[108] Justice Harlan explained that the ultimate question of whether Thompson had written the prescription was left for the jury to decide, and that the jury's decision was governed by the same duty before and after the passage of the law.[109]

---

[101] *See id.*

[102] *Id.*

[103] *See id.* at 382.

[104] *Id.* at 388.

[105] *Id.* at 383.

[105] *See id.* at 384 (noting that the law in *Kring* was invalidated because the right to protection against a first-degree murder conviction was a "substantial one").

[107] *Id.* at 386. Justice Harlan noted:

[I]t is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him . . . so far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place.

[108] *Id.* at 387.

[109] *Id.* (reasoning that the ultimate determination "was left for the jury and the duty of the jury, in that particular, was the same after as before the passage of the

## D. MODERN INTERPRETATION OF THE EX POST FACTO CLAUSE: BEAZELL V. OHIO AND COLLINS V. YOUNGBLOOD

In the twentieth century, the Court addressed the question of whether procedural statutes violated the Ex Post Facto Clause in two important cases, *Beazell v. Ohio*[110] and *Collins v. Young-blood*.[111] The Court in *Beazell* appeared to abandon the *Kring* and *Thompson* tests for determining if procedural rules violated the Ex Post Facto Clause,[112] and in *Collins* the Court adopted *Beazell's* reasoning, overruling *Kring* and *Thompson* outright.[113] *Beazell* and *Collins* changed the way the Court analyzed procedural rules under the Ex Post Facto Clause.

In *Beazell*, the Court upheld a statute of criminal procedure dealing with defendants who were jointly indicted, tried, and convicted.[114] The defendants in *Beazell* were jointly indicted for embezzlement.[115] At the time the defendants committed the offense, Ohio law provided that "when two or more persons are jointly indicted for a felony, on application to the court for that purpose, each shall be tried separately."[116] After the commission of the defendants' offense, but before their trials, the law was changed to provide, "when two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly, unless the court for good cause shown . . . order that one or more of said defendants shall be tried separately."[117] Beazell was jointly tried with his co-defendant, and convicted.[118] He challenged application of the new law to his case on the basis that it violated the Ex Post Facto Clause.[119]

---

statute. The statue did nothing more than remove an obstacle arising out of a rule of evidence . . . .").

[110] 269 U.S. 167 (1925).

[111] 497 U.S. 37 (1990).

[112] *See Beazell*, 269 U.S. at 170-171.

[113] *See Collins*, 497 U.S. at 43 (explaining that "the *Beazell* formulation is faithful to our best understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."); *Id.* at 50-51 (overruling *Kring*, overruling *Thompson*).

[114] *See Beazell*, 269 U.S. at 171.

[115] *Id.* at 168.

[116] *Id.*

[117] *Id.* at 169.

[118] *Id.*

[119] *See id.*

The Court held that application of the new Ohio statute to Beazell's case did not violate the Ex Post Facto Clause.[120] Justice Stone, writing for the Court, set out the definition of ex post facto laws as follows:

> It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.[121]

In setting out this definition, Justice Stone omitted the fourth category of *Calder*.[122] However, the Court did reason that the Ohio statute was not ex post facto, in part because "the quantum and kind of proof required to establish guilt, and all questions which may be considered by the court and jury in determining guilt or innocence, remain the same."[123] Justice Stone acknowledged that previous judicial decisions have held that alterations of the rules of evidence or procedure could be ex post facto, and cited *Calder*, *Cummings*, and *Kring*.[124] But Justice Stone explained that these kinds of procedural changes were not to be considered ex post facto unless they deprived the accused of a defense. If they operated "only in a limited and unsubstantial manner to his disadvantage," they were not ex post facto.[125] Finally, Justice Stone explained that there was no formula for determining what alterations of procedure were "of sufficient moment to transgress the constitutional prohibition."[126] It could be argued that Justice Stone collapsed the four-category *Calder* definition into three with this reasoning, includ-

---

[120] *See id.* at 171.

[121] *Id.* at 169-70.

[122] *See id.* (making no reference to any law that "alters the legal rules of evidence. . .").

[123] *Id.* at 170.

[124] *Id.* (explaining that "[e]xpressions are to be found in earlier judicial opinions to the effect that the constitutional limitation may be transgressed by alterations in the rules of evidence or procedure").

[125] *Id.* at 170-71.

[126] *Id.* at 171.

ing changes in the rules of evidence in the definition only if they deprived the accused of a defense.[127]

In *Collins*, the Court adopted the *Beazell* definition of ex post facto laws, and upheld a Texas statute that allowed reformation of improper verdicts.[128] Defendant Carroll Youngblood was charged and convicted of aggravated sexual assault, and was sentenced by a jury to life imprisonment and a $10,000 fine.[129] The imposition of a fine was not authorized by statute, and, under the controlling case law,[130] the judgment and sentence were void, and Youngblood was entitled to a new trial.[131] While Youngblood was in the process of petitioning for habeas corpus relief, the legislature passed a law allowing appellate courts to reform improper verdicts.[132] Relying on this law, the trial court reformed Youngblood's verdict by ordering deletion of the fine.[133] Under the old version of the law, Youngblood would have received a new trial after the improper verdict was rendered.[134] Under the new law, the trial court was able to delete the fine, thereby reforming the verdict without need for a new trial.[135] Youngblood challenged the application of the new Texas statute to his case on the basis that it violated the Ex Post Facto Clause.[136]

The Court held that the application of the Texas statute did not violate the Ex Post Facto Clause.[137] Chief Justice Rehnquist,

---

[127] *See* Carmell v. Texas, 120 S. Ct. 1620, 1651 (2000)(Ginsburg, J., dissenting) (arguing that the *Calder* categories had been pared down to three).

[128] *See* Collins v. Youngblood, 497 U.S. 37, 52. (1990)

[129] *See id.* at 39.

[130] Bogany v. State, 661 S.W.2d 957 (1983).

[131] *See Collins*, 497 U.S. at 39.

[132] *See id.* at 39-40 (citing TEX. CODE CRIM. P. ANN. art. 37.10(b) (West 1990)).

[133] *See id.* at 40.

[134] *See id.* at 39.

[135] *See id.* at 40.

[136] *See id.*

[137] *Id.* at 52 (noting that application of the law to "respondent therefore is not prohibited by the Ex Post Facto Clause"). It is interesting to note that Justice Stevens, author of the *Carmell* majority opinion, concurred in the judgment in *Collins*. *See id.* at 52 (Stevens, J., concurring in the judgment). Justice Stevens agreed with the conclusion in *Collins*, but reasoned that the conclusion was "entirely consistent with out precedents." *Id.* at 52-53 (Stevens, J., concurring in the judgment); *see infra* note 143 (discussing the Court's decision in *Collins* to overrule *Kring* and *Thompson*). Justice Stevens reasoned that under the framework of *Kring* and *Thompson*, as interpreted by *Beazell*, the question of whether a procedural statute has a sufficiently drastic impact on a defendant to be characterized as "substantial" is "a matter of degree." *See* Collins

writing for the Court, cited the four *Calder* categories, and noted that the principles of the definition, and the meaning of the Clause itself, was best summarized by *Beazell:*

> [A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to the law at the time when the act was committed, is prohibited as ex post facto.[138]

Chief Justice Rehnquist noted that the *Beazell* formulation omitted the fourth category of *Calder*, and explained that the *Beazell* formulation was faithful to "our *best* knowledge of the original understanding of the Ex Post Facto Clause."[139]  Chief Justice Rehnquist pointed out that the early state constitutions mirrored the formulation of ex post facto laws set forth in *Beazell.*[140]  The *Beazell* formulation, according to Chief Justice Rehnquist, comported with Blackstone's definition of ex post facto laws as well.[141]  Chief Justice Rehnquist ultimately applied the elements of the *Beazell* formulation, one by one, to Youngblood's case, and determined that the application of the new Texas statute did not offend the Ex Post Facto Clause.[142]

In addition to adopting and applying the *Beazell* formulation for determining whether a law is ex post facto, the *Collins* Court

---

v. Youngblood, 497 U.S. 37, 57 (1990) (Stevens, J., concurring in the judgment). Justice Stevens proposed a "threshold test," under which the Court would nullify a procedural statute if it affected "the modes of procedure by which a valid conviction or sentence may be imposed." *Id.* at 58 (Stevens, J., concurring in the judgment); *see also infra* Section IVA, at 38 (Justice Stevens' discussion of procedural laws that disproportionately aid the prosecution in obtaining a conviction).

[138] Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S. 167 (1925)).

[139] *Collins*, 497 U.S. at 43.

[140] *See id.* (citing and discussing the state constitutions of Maryland and North Carolina).

[141] *Id.* at 44 (Blackstone explained that ex post facto laws were passed "when after an action (indifferent in itself) is committed, the legislator then for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it").

[142] *See id.* at 52 ("The Texas statute allowing reformation of improper verdicts does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed. Its application to respondent therefore is not prohibited by the Ex Post Facto Clause of Art. I, § 10").

overruled two earlier cases, *Kring* and *Thompson*.[143] In overruling these cases, Chief Justice Rehnquist explained that *Kring* and *Thompson's* discussion of "substantial protections," and "substantial personal rights," had "imported confusion into the interpretation of the Ex Post Facto Clause."[144] The Court reasoned that testing a statute to determine if it was "merely procedural" or if it implicated a "substantial right" was not consistent with the original understanding of the Ex Post Facto Clause at the time that the Constitution was drafted.[145]

## III. FACTS AND PROCEDURAL HISTORY

In 1996, defendant Scott Leslie Carmell was charged in a 15-count indictment by a Texas grand jury for various sexual offenses committed against his stepdaughter.[146] Carmell was charged with eight counts of indecency with a child, two counts of aggravated sexual assault, and five counts of sexual assault against his daughter; he was convicted on all fifteen counts in the 367th District Court in Texas.[147] Carmell committed the offenses against his daughter over a prolonged period of more than four years, from February 1991 to March 1995.[148] Carmell's daughter was twelve years old when Carmell began victimizing her, and sixteen when the conduct ceased.[149] The assaults ended in 1995, when Carmell's daughter told her mother what had happened.[150] The Court sentenced Carmell to life imprisonment for each of the two aggravated sexual assault offenses and imposed concurrent twenty-year sentences for each of the remaining thirteen counts in the indictment.[151] Carmell was

---

[143] *Id.* at 50, 51 (overruling *Kring,* overruling *Thompson*). It is interesting to note that Justice Stevens, the author of the majority opinion in *Carmell,* did not agree that *Kring* and *Thompson* should be overruled. *See* Collins v. Youngblood, 497 U.S. 37, 52-53 (1990) (Stevens, J., concurring in the judgment); *see also supra* note 137. Instead, Justice Stevens argued that the Court's conclusion was "entirely consistent with our precedents." *Collins,* 497 U.S. at 52-53.

[144] Collins v. Youngblood, 497 U.S. 37, 45 (1990).

[145] *See id.* at 47 ("Neither of these decisions, in our view, is consistent with the understanding of the term 'ex post facto law' at the time the Constitution was adopted").

[146] *See* Carmell v. Texas, 120 S. Ct. 1620, 1624 (2000).

[147] *See id.*

[148] *See id.*

[149] *Id.*

[150] *See id.*

[151] *See id.*

convicted on all fifteen counts in the indictment on the basis of his daughter's uncorroborated testimony.[152]

In 1992, when Carmell began victimizing his daughter, the Texas Code of Criminal Procedure provided:

> A conviction under Chapter 21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense alleged to have occurred. The requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than 14 years of age at the time of the alleged offense.[153]

Under the Texas statute, a sexual offender could not be convicted on the basis of a victim's testimony alone, unless one of two exceptions applied.[154] The first exception created an "outcry" provision; a victim's uncorroborated testimony was sufficient to support a conviction if the victim told anyone, other than the defendant, about the offense within six months after the date on which the offense was committed.[155] The second exception created a "child victim" provision, which applied based on the victim's age; a victim's uncorroborated testimony was sufficient to support a conviction if the victim was under fourteen years old on the date of the offense.[156] Carmell committed eleven offenses against his daughter during the time that these provisions were in effect.[157] Six of the offenses were committed when Carmell's daughter was under fourteen, and they were not contested.[158]

On September 1, 1993, the Texas statute was amended. The amendment extended the child victim exception to victims under eighteen years of age.[159] Carmell was convicted in 1996 under the provisions of the amended statute.[160] Of the fifteen counts for which Carmell was charged, he committed four of

---

[152] *See* Carmell v. Texas, 120 S. Ct. 1620, 1624 (2000).

[153] *See id.* at 1624 (quoting TEX. CODE CRIM. P. ANN. art. 38.07 (West 1983)).

[154] *See Carmell,* 120 S. Ct. at 1625.

[155] *See id.* at 1624-25.

[156] *See id.* at 1625.

[157] *See id.* at 1626.

[158] *See* Carmell v. Texas, 120 S. Ct. 1620, 1626 (2000).

[159] *See supra* note 3 (the amendment also extended the time period on the outcry provision to one year); *Carmell,* 120 S. Ct. at 1625.

[160] *See Carmell,* 120 S. Ct. at 1624.

them while the older version of the statute was in place and while his daughter was fourteen to fifteen years of age.[161] Thus, if the older version of the statute were applied to these offenses, Carmell's conviction could not stand; his daughter did not satisfy the outcry provision and was not young enough to qualify under the child victim provision of the statute.[162] Five of the remaining offenses for which Carmell was charged occurred after the amendment of the statute and were therefore not contested.[163] The two counts of aggravated sexual assault, for which life imprisonment sentences were imposed, were not at issue.[164]

The defendant appealed four of his convictions for offenses committed between June 1992 and July 1993, during which time his daughter was fourteen and fifteen years old and before the Texas law was amended.[165] On appeal, Carmell argued that the older version of the Texas statute should have applied to those offenses committed prior to the 1993 amendment.[166] Carmell further asserted that the four convictions he was appealing could not have stood under the older version of the statute because the victim's testimony was uncorroborated, the victim was over fourteen years of age, and the victim had not made an outcry to satisfy the outcry provision.[167] Carmell argued that applying the new law to offenses committed before the statute was amended violated the Constitutional prohibition on ex post facto laws.[168]

The Court of Appeals upheld Carmell's convictions,[169] holding that application of the amendment retrospectively to Carmell's offenses did not violate the Ex Post Facto Clause of the Constitution.[170] The Court of Appeals reasoned that Texas Arti-

---

[161] *See id.* at 1626.

[162] *See id.*

[163] *See id.*

[164] *See* Carmell v. Texas, 120 S. Ct. 1620, 1626 (2000).

[165] *See id.*

[166] *See id.*

[167] *See id.*

[168] *See id.*

[169] *See* Carmell v. Texas, 963 S.W.2d 833 (1998).

[170] *See id.* at 836 (noting that "the statute as amended does not increase the punishment nor change the elements of the offense that the State must prove. It merely 'removes existing restrictions upon the competency of certain classes of persons as witnesses' and is, thus, a rule of procedure") (quoting Hopt v. Utah, 110 U.S. 574, 590 (1884) ).

cle 38.07 functioned as a rule of witness competency and was therefore not an ex post facto law under the holding of *Hopt v. Utah.*[171] The Texas Court of Criminal Appeals denied discretionary review.[172] The United States Supreme Court granted Carmell's pro se petition for certiorari and appointed counsel.[173]

## IV. SUMMARY OF OPINIONS

### A. THE MAJORITY OPINION

On May 1, 2000, the Supreme Court reversed the decision of the Court of Appeals of Texas, and vacated the convictions against Carmell.[174] Writing for the majority, Justice Stevens ruled that the application of Texas Article 38.07, as amended, to Carmell's four contested convictions, could not be sustained under the Ex Post Facto Clause of the United States Constitution.[175] In particular, the Court reasoned that application of amended Texas Article 38.07 violated the Ex Post Facto Clause under the fourth category of ex post facto laws as defined in the early case of *Calder v. Bull.*[176]

The Court first analyzed the components of the Texas statute, and determined that "Texas courts treat Article 38.07 as a sufficiency of the evidence rule, rather than as a rule concerning the competency or admissibility of evidence."[177] Justice Stev-

---

[171] *See Carmell,* 963 S.W.2d. at 836; *see also supra* note 93.

[172] *See Carmell,* 120 S. Ct. at 1626.

[173] *See* Carmell v. Texas, 120 U.S. 1620, 1626 (2000).

[174] *See id.* at 1643.

[175] *See id.* The Court split five to four in the decision, with Justices Scalia, Souter, Thomas, and Breyer joining in the majority opinion. Justice Ginsburg filed a dissenting opinion, in which Chief Justice Rehnquist joined, as well as Justices O'Connor and Kennedy. *See id.* at 1624. This split was described as extremely odd by commentators. *See* Tony Mauro, *U.S. Supreme Court 1999-2000 Term in Review; There Were Fewer Cases but More Close Calls,* TEXAS LAWYER, July 10, 2000, at 8 (noting that *Carmell* "produced the rarest alignment in the court: a majority composed of the left and right wings with all the members of the court's center—Rehnquist, O'Connor and Kennedy—in dissent"). It is interesting to note that Justice Stevens concurred in the judgment in *Collins. See supra* note 137, at 143 (discussing Justice Stevens' reasoning that the question of whether procedural statutes violate the Ex Post Facto Clause is a matter of degree); *see also infra* Section IVA, at 38-40 (discussion of procedural rules altering the sufficiency of the evidence necessary to obtain a conviction).

[176] *See Carmell,* 120 S. Ct. at 1624.

[177] *See id.* at 1625 n.2 (explaining that the Texas statute included three components: an "outcry" provision, a "child victim" provision, and "a sufficiency of the evi-

ens based this determination on the differences between the consequences of the rules of evidence admissibility, and the consequences of Texas Article 38.07.[178] He noted that "when evidence that should have been excluded is erroneously admitted against a defendant" under the ordinary rules of evidence, an appellate court will reverse a conviction and remand for a new trial, whereas a "failure to comply with Article 38.07, by contrast, results not in remand for a new trial, but in the reversal of conviction and remand for entry of an order or acquittal."[179]

The Court then analyzed the history and purpose of the Ex Post Facto Clause of the Constitution and adopted the definition of ex post facto laws set out in the early case of *Calder v. Bull.*[180] Justice Stevens explained that Justice Chase derived the four-category definition of ex post facto laws outlined in *Calder* largely from the treatise of Richard Wooddeson, "one of the great scholars of the common law."[181] Justice Stevens noted that the same formulation had been approved by such great academics as Joseph Story and James Kent.[182] In support of the formulation, the majority cited a host of Supreme Court cases that had adopted the four-category formulation[183] and argued that these

---

dence rule respecting the minimum quantum of the evidence necessary to sustain a conviction").

[178] Carmell v. Texas, 120 S. Ct. 1620, 1625, n.2 (2000).

[179] *Id.*

[180] *See id.* at 1626-31 (noting that "this Court, . . . has repeatedly endorsed [Calder's] understanding, including, in particular, the fourth category"); for the four-category definition of ex post facto laws in *Calder v. Bull, see supra* note 11.

[181] *See Carmell,* 120 S. Ct. at 1627-28 (noting that Wooddeson's treatise divided ex post facto laws into three categories: "those respecting the crimes themselves; those respecting the legal rules of evidence; and those affecting punishment (which . . . further subdivided into laws creating a punishment and those making an existing punishment more severe)." The Court explained that Justice Chase's formulation "correlate[s] precisely" to Calder's four categories).

[182] *See id.* at 1628.

[183] *Id.* at 1628-29. The Court cited Lynce v. Mathis, 519 U.S. 433, 441 (1997); Dobbert v. Florida, 432 U.S. 282, 293 (1977); Malloy v. South Carolina, 237 U.S. 180, 183-84 (1915); Mallett v. North Carolina, 181 U.S. 589, 593-94 (1901); Thompson v. Missouri, 171 U.S. 380, 382 (1898); Hawker v. New York, 170 U.S. 189, 201 (1898) (Harlan, J., dissenting); Gibson v. Mississippi, 162 U.S. 565, 589-90 (1896); Duncan v. Missouri, 152 U.S. 377, 382 (1894); Hopt v. Territory of Utah, 110 U.S. 574, 589 (1884); Kring v. Missouri, 107 U.S. 221, 228 (1883), *rev'd on other grounds,* Collins v. Youngblood, 497 U.S. 37 (1990); Gut v. State, 9 Wall. 35, 38 (1870); *Ex parte* Garland, 4 Wall. 333, 390-91 (1867) (Miller, J., dissenting); Cummings v. Missouri, 4 Wall. 277, 325-26 (1867).

cases adopted the *fourth* category[184] of *Calder* in particular, "sometimes quoting Justice Chase's words verbatim, sometimes simply paraphrasing."[185]

In order to fully understand the implications of the fourth category of *Calder*, the Court turned to the English case of Sir John Fenwick.[186] The same case is cited in *Calder* under the fourth category for the proposition that statutes altering the sufficiency of the evidence needed to convict a criminal defendant are invalid, ex post facto laws.[187] The majority analogized Fenwick's case to Carmell's, arguing that the laws in each case "alter[ed] the legal rules of evidence," receiving less testimony than the law required at the time the offenses were committed.[188] Justice Stevens argued that the circumstances in Fenwick's case paralleled the circumstances in *Carmell*:

> Just as the relevant law in Fenwick's case required more than one witness' testimony to support a conviction . . . , Texas' old version of Article 38.07 required more than the victim's testimony alone to sustain a conviction. . . . And just like Fenwick's bill of attainder, which permitted the House of Commons to convict him with less evidence than was otherwise required, Texas' retrospective application of the amendment to Article 38.07 permitted petitioner to be convicted with less than the previously required quantum of evidence.[169]

The Court then argued that the fourth category of *Calder* functions as a safeguard against the subversion of "fundamental justice."[190] As Justice Stevens explained, the interests of fundamental justice were at the heart of the passage of the Ex Post Facto Clause.[191] The framers desired to protect against laws that

---

[184] Calder v. Bull, 3 U.S. 386, 390 (1798) ("4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender").

[185] Carmell v. Texas, 120 S. Ct. 1620, 1628-29 (2000).

[185] For a discussion of the facts of Sir John Fenwick's case, *see supra* Section IIB.

[187] *See Carmell*, 120 S. Ct. at 1629-31; *see also Calder*, 3 U.S. at 389 (citing "the case of Sir John Fenwick, in 1696" as an example of laws that "violated the rules of evidence . . . by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband; or other testimony, which the courts of justice would not admit . . .").

[183] *Carmell*, 120 S. Ct. at 1631.

[189] *Id.* at 1631-32.

[190] *Id.* at 1632 (noting that "the fourth category, so understood, resonates harmoniously with one of the principal interests that the Ex Post Facto Clause was designed to serve, fundamental justice").

[191] *Id.*

were "manifestly unjust and oppressive."[192] The majority insisted that the fourth category addressed these concerns directly and that "a law reducing the quantum of evidence required to convict an offender is as grossly unfair as retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof."[193]

The Court distinguished an ordinary amendment to the rules of evidence from an alteration in the rules of evidence favoring the prosecution.[194] Justice Stevens pointed out that most amendments to the rules of evidence apply in an evenhanded fashion, adversely affecting or benefiting both sides equally.[195] In contrast, the Court argued that the amendment to Texas Article 38.07 could only benefit the prosecution.[196] Justice Stevens argued that retroactively applying any statute such as this one, "making it easier to meet the threshold for overcoming the presumption" of innocence, is fundamentally unfair.[197] He argued that in so doing, the government "refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction."[198] Thus, the Court concluded that laws of this nature allow the government to "subvert the presumption of innocence by reducing the number of elements it must prove to overcome that presumption; by threatening such severe punishment so as to induce a plea to a lesser offense or a lower sentence; or by making it easier to meet the threshold for overcoming the presumption."[199]

The majority concluded that the four category definition of ex post facto laws outlined in *Calder*, including the fourth category involving laws that alter the rules of evidence, continue to

---

[192] Carmell v. Texas, 120 S. Ct. 1620, 1632 (2000) (adding that the Ex Post Facto Clause was drafted "as an additional bulwark in favour of the personal security of the subject, to protect against the favorite and most formidable instruments of tyranny").

[193] *Id.* at 1632-33.

[194] *See id.* at 1633.

[195] *See id.* (reasoning that rules of evidence "are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given case," and arguing that regular rules regarding admissibility "do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption").

[196] *See id.*

[197] *Id.* at 1633.

[198] Carmell v. Texas, 120 S. Ct. 1620, 1633 (2000).

[199] *Id.*

be good law.[200] The court also concluded that amended Texas Article 38.07 fell under the fourth *Calder* category of ex post facto laws.[201] In light of this analysis, the Court held that retroactive application of amended Texas Article 38.07 to Carmell's contested four convictions violated the Ex Post Facto Clause of the United States Constitution.[202]

In response to the dissent's argument that *Collins* and *Beazell* effectively re-formulated the definition of ex post facto laws[203] without using the fourth category of *Calder,* Justice Stevens argued that instead, *Collins* did not abandon the fourth category and was "rather cryptic."[204] The *Carmell* Court noted that *Collins* referred to *Calder's* four categories as the "exclusive definition" of ex post facto laws but also called *Beazell's* definition a "faithful" rendition of the original understanding of the clause, even though it omitted category four.[205] A footnote in *Collins* explains, as the majority pointed out, that "the Beazell definition omits the reference by Justice Chase in *Calder v. Bull* to alterations in the legal rules of evidence. As cases subsequent to Calder make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes."[206] Justice Stevens acknowledged that *Collins* went on to assert that the *Beazell* formulation was true to the original understanding of the Ex Post Facto Clause.[207] But Justice Stevens explained: "if *Collins* had intended to resurrect a long forgotten original understanding of the Ex Post Facto Clause, shorn of the fourth category, we think it strange that it would have done so in a footnote."[208] The majority concluded that *Collins* merely "eliminated a doctrinal hitch" that had developed in the case law, defining the scope of the Ex Post Facto Clause along the lines of distinguishing between substantial protections and procedural provisions.[209] Thus, the Court summarized, "*Collins* held that it was a mistake to stray beyond *Calder's*

[200] *See id.* at 1643.

[201] *See id.*

[202] *See id.*

[203] *See infra* Section IVB.

[204] *Carmell,* 120 S. Ct. at 1635.

[205] Carmell v. Texas, 120 S. Ct. 1620, 1635-36 (2000).

[206] *Id.* at 1635 (quoting *Collins,* 497 U.S. at 43, n. 3)

[207] *See Carmell,* 120 S. Ct. at 1635.

[208] *Id.* at 1636.

[209] *Id.*

four categories, not that the fourth category was itself mistaken."[210] Justice Stevens ultimately determined that the *Calder* categories had not been abandoned in *Beazell* or *Collins*.[211]

In response to the dissent's argument that the fourth category applies only to laws that alter the burden of proof,[212] the Court noted that there is no distinction between laws that alter the burden of proof and laws that "reduce the quantum of the evidence necessary to meet that burden."[213] The effect of both kinds of laws, according to Justice Stevens, is the same: "the two types of laws are indistinguishable in all meaningful ways relevant to concerns of the Ex Post Facto Clause. 'The legal result must be the same, for what cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows.'"[214] In other words, the distinction between a law altering the burden of proof and a law lowering the quantum of the evidence needed to meet that burden of proof is merely technical.[215] The effect of both, in regard to the legal result, however, is the same.[216]

Finally, the Court argued that the dissent's reliance on *Hopt* for the proposition that Article 38.07 functions as a rule of witness competency,[217] rather than a sufficiency of the evidence rule, is misplaced, and that 38.07 does not function as a rule of witness competency.[218] In support of this contention, Justice Stevens pointed out that both before and after the amendment to Article 38.07, the victim's testimony was competent evidence under the law.[219] Further, the majority explained that *Hopt* expressly distinguished between witness competency laws and laws that "alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime

---

[210] *Id.*

[211] *See id.*

[212] *See infra* Section IVB.

[213] Carmell v. Texas, 120 S. Ct. 1620, 1637 (2000).

[214] *Id.* (quoting Cummings v. Missouri, 71 U.S. 277, 325 (1867)).

[215] *Carmell,* 120 S. Ct. at 1637.

[216] *See id.*

[217] *See supra* Section IIB.

[218] *Carmell,* 120 S.Ct. at 1638-43.

[219] *See id.* at 1639.

was committed."[220] Article 38.07, the majority argued, is the latter – a sufficiency of the evidence rule.[221]

The Court distinguished between laws of witness competency and sufficiency of the evidence laws by explaining that witness competency laws apply in an evenhanded fashion, whereas the sufficiency of the evidence laws work in perpetual favor of the prosecution.[222] In this case, Justice Stevens argued, Article 38.07 functioned as a sufficiency of the evidence rule, working only in favor of the prosecution in every case.[223]

## B. JUSTICE GINSBURG'S DISSENT

In a dissenting opinion joined by Chief Justice Rehnquist, Justice O'Connor, and Justice Kennedy, Justice Ginsburg attacked the majority opinion on three general grounds. First, Justice Ginsburg questioned the majority's conclusion that Texas Article 38.07 is a "sufficiency of the evidence rule" and argued that the statute is functionally equivalent to witness competency and credibility rules, held to be non-violative of the Ex Post Facto Clause under *Hopt v. Utah*.[224] Next, Justice Ginsburg argued that the fourth category of *Calder* applied only to those laws that lowered the prosecution's burden of persuasion.[225] Justice Ginsburg noted that Texas Article 38.07 in no way affected "the burden of persuasion that the prosecution must satisfy to support a conviction."[226] Finally, Justice Ginsburg argued that the fourth category of *Calder* is no longer valid law.[227] She argued that *Collins v. Youngblood*[228] "pared the num-

---

[220] *Id.*

[221] *See id.*

[222] *See id.* at 1639-40 (noting that such rules will always run in the prosecution's favor, because "they always make it easier to convict the accused. . . . Witness competency rules, to the contrary, do not necessarily run in the State's favor. A felon witness competency rule, for example, might help a defendant if a felon is able to relate credible exculpatory evidence").

[223] *See id; See supra* Section IVA, discussion of the majority's reliance on Fenwick's case for the proposition that Texas Article 38.07 fell under the fourth *Calder* category of ex post facto laws.

[224] *See* Carmell v. Texas, 120 S. Ct. 1620, 1646 (2000). (Ginsburg, J. dissenting) (noting that "the history of Article 38.07 bears out the view that its focus has always been on the competency and credibility of the victim as a witness"); *See* Hopt v. Territory of Utah, 110 U.S. 574 (U.S. 1884).

[225] *Id.* at 1647 (Ginsburg, J., dissenting).

[226] *Id.*

[227] *Id.*

ber of *Calder* categories down to three, eliminating altogether the fourth category on which the Court ... so heavily relies."[229]

The dissent first attacked the majority by pointing out that Texas Article 38.07 is not a "sufficiency of the evidence rule" as the majority had claimed, but is rather a rule "functionally identical to a conditional rule of witness competency."[230] According to Justice Ginsburg, Texas Article 38.07 is an evidentiary provision under which the jury may credit victim testimony.[231] Thus, if a victim falls under one of the exceptions in the statute (either by virtue of age alone, or by making an "outcry" within the specified time period), the statute simply gives the victim full testimonial stature, and an undiminished competency to testify.[232] The premise for this statute, the dissent argued, is the legislative judgment that accusations made by sexual assault victims above a certain age were not independently trustworthy.[233] Justice Ginsburg likened the corroboration requirement in the statute to corroboration requirements in similar evidentiary provisions, particularly those regarding accomplices.[234] The dissent argued that accomplice corroboration requirement statutes, like Texas Article 38.07, were "designed to ensure the credibility of the relevant witness," not to affect the sufficiency of the evidence required to obtain a conviction.[235]

Justice Ginsburg further indicated that the legislative history of Texas Article 38.07 bears out the interpretation of 38.07 as a witness competency and credibility provision.[236] As Justice Gins-

---

[228] 110 S.Ct. 2715 (1990).

[229] *Carmell*, 120 S. Ct. at 1651 (Ginsburg, J., dissenting).

[230] *Id.* at 1649 (Ginsburg, J., dissenting).

[231] *See id.* at 1646 (Ginsburg, J., dissenting) (reasoning that "the version of Article 38.07 applied at Carmell's trial was thus, in both effect and purpose, an evidentiary rule governing the weight that may be given to the testimony of sexual assault victims who had attained the age of 14").

[232] *Id.* at 1645 (Ginsburg, J., dissenting) (noting that "If the victim is of a certain age, the jury, in assessing whether the prosecution has met its burden of demonstrating guilt beyond a reasonable doubt, must give no weight to her testimony unless that testimony is corroborated, either by other evidence going directly to guilt or by 'outcry'").

[233] *See id.* (Ginsburg, J., dissenting).

[234] *See id.* at 1645-46 (Ginsburg, J., dissenting) (stating that "it suffices to note that Article 38.07's corroboration requirement rests on the same rationale that underpins accomplice corroboration requirements: the notion that a particular witness, because of his or her role in the events at issue, might not give trustworthy testimony").

[235] *Id.* at 1645 (Ginsburg, J., dissenting).

[236] *See id.* at 1646 (Ginsburg, J., dissenting).

burg explained, "the historical development of Article 38.07 reveals a progressive alleviation of restrictions on the competency of victim testimony, not a legislative emphasis on the quantum of evidence needed to convict."[237] The dissent explained that Article 38.07 was functionally equivalent to a witness credibility statute: "If the former version of Article 38.07 had provided that 'the testimony of the victim shall be inadmissible to prove the defendant's guilt unless corroborated,' it would produce the same results as the actual statute in every case."[238] Under *Hopt*,[239] Justice Ginsburg argued, rules of evidence affecting witness competency do not violate the Ex Post Facto Clause of the Constitution.[240]

Next, Justice Ginsburg argued that Article 38.07 did not alter the prosecution's burden of persuasion and therefore did not violate the Ex Post Facto Clause as interpreted through the fourth category of *Calder*.[241] The dissent pointed out that the prosecution's burden of persuasion remains the same whether or not Article 38.07 applies; regardless of its application, the prosecution must prove all of the elements of the offense beyond a reasonable doubt.[242] As Justice Ginsburg noted, if the prosecution seeks to obtain conviction on the basis of a victim's uncorroborated testimony, and the witness satisfies one of the exceptions under Article 38.07, the conviction can only be obtained if the prosecution proves all the elements of the offense beyond a reasonable doubt, regardless of the application of 38.07.[243] Thus, satisfaction of 38.07 can be *necessary* to obtain a conviction where the prosecution seeks to obtain the conviction on the victim's uncorroborated testimony alone, but it is not *sufficient* unless the prosecution meets its burden of proving guilt beyond a reasonable doubt.[244] Further, Justice Ginsburg argued, the victim's testimony is not even necessary in many cases: "To convict a defendant of sexual assault in Texas today as before

---

[237] *Id.* (Ginsburg, J., dissenting).

[238] *Id.* at 1649 (Ginsburg, J., dissenting).

[239] 110 U.S. 574 (1884).

[240] *See id.* at 589 (emphasizing that "[s]tatutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage").

[241] *See* Carmell v. Texas, 120 S. Ct. 1620, 1647 (2000) (Ginsburg, J., dissenting).

[242] *See id.* (Ginsburg, J., dissenting).

[243] *See id.* (Ginsburg, J., dissenting).

[244] *See id.* (Ginsburg, J., dissenting).

1993, the prosecution need not introduce the victim's testimony at all, much less any corroboration of that testimony."[245] The dissent ultimately concluded that Article 38.07 merely functioned to restrict the State's method of proving its case, "without affecting in any way the burden of persuasion that the prosecution must satisfy to support a conviction."[246]

Additionally, Justice Ginsburg argued that the amendment to Article 38.07 did not "reduce the quantum of evidence necessary" to convict, for the "simple reason that Texas has never required the prosecution to introduce any particular number of witnesses or items of proof to support a sexual assault conviction" in the first place.[247] Further, the dissent noted that Article 38.07 did not "subvert the presumptions of innocence," using the language of the majority, because "the burden of persuasion remained at all times with the State."[248]

In sum, Justice Ginsburg depicted the "sufficiency of the evidence" needed to convict as an evidentiary hurdle; the 1993 repeal of the corroboration requirement for victims between the ages of fourteen and eighteen did not lower that hurdle, according to Justice Ginsburg, but "simply expanded the range of methods the State could use to surmount" that hurdle.[249]

Finally, the dissent argued that the fourth category of *Calder* has been effectively nullified by subsequent Supreme Court cases.[250] Justice Ginsburg highlighted the fact that the four-category definition of ex post facto laws in *Calder* was dictum, as *Calder* involved a civil statute, not a criminal one.[251] Further, the dissent indicated that Justices Iredell and Paterson, in their own concurring opinions, "gave no hint" that they considered the

---

[245] *Id.* (Ginsburg, J., dissenting).

[246] *Id.* (Ginsburg, J., dissenting).

[247] *Id.* (Ginsburg, J., dissenting).

[248] *Id.* at 1648 (Ginsburg, J., dissenting) (noting that the majority's reliance on *Cummings v. Missouri*, 4 Wall. 277 (1867), from which the phrase "subvert the presumptions of innocence" originated, was misplaced, because *Cummings* dealt with a post-Civil War amendment that *assumed* parties were guilty of treason unless they swore an oath to establish their innocence. The dissent noted that "nothing of the kind" is involved in the *Carmell* case).

[249] *Carmell*, 120 S. Ct. 1648 (Ginsburg, J., dissenting).

[250] *See id.* at 1651 (Ginsburg, J., dissenting).

[251] *See id.* (Ginsburg, J., dissenting) (explaining that "Justice Chase's formulation was dictum, of course, because *Calder* involved a civil statute and the court held that the statute was not ex post facto for that reason alone").

rules of evidence to fall within the scope of the Ex Post Facto Clause.[252] Justice Ginsburg pointed to the ex post facto formulation in *Beazell* and *Collins* and noted that they omitted the fourth category of *Calder* completely.[253] In *Beazell*, Justice Ginsburg noted, the Court catalogued ex post facto laws without even mentioning *Calder's* fourth category,[254] and *Collins* approved of this formulation, concluding that "the *Beazell* formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."[255]

The dissent attacked the majority's assertion that the Court has repeatedly endorsed Justice Chase's formulation.[256] Although the majority cited what Justice Ginsburg called "an impressive-looking" array of cases in support of this assertion, she pointed out that all of the cases cited "simply quoted or paraphrased Chase's enumeration, a mechanical task that naturally entailed a recitation of the fourth category."[257] Further, the dissent noted that not one of these cases depended on the fourth category for the judgment the Court reached.[258] Justice Ginsburg explained that the only two cases to strike down retroactive application of rules as ex post facto under the fourth category of *Calder*, *Kring v. Missouri*[259] and *Thompson v. Utah*,[260] were both overruled by *Collins*.[261]

---

[252] *Id.* (Ginsburg, J., dissenting).

[253] *See id.* (Ginsburg, J., dissenting) (noting that "[a]s long ago as 1925, in *Beazell v. Ohio*, . . . the Court catalogued ex post facto laws without mentioning Chase's fourth category at all").

[254] *See Beazell*, 46 S. Ct. at 68 (defining ex post facto laws as "any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed").

[255] Carmell v. Texas, 120 S. Ct. 1620, 1651 (2000) (Ginsburg, J., dissenting) (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)).

[256] *Carmell* 120 S. Ct. at 1651 (Ginsburg, J., dissenting).

[257] *Id.* (Ginsburg, J., dissenting).

[258] *Id.* (Ginsburg, J., dissenting).

[259] 2 S. Ct. 443 (1883).

[260] 18 S. Ct. 620 (1898).

[261] *See* Carmell v. Texas, 120 S. Ct. 1620, 1652 (2000) (Ginsburg, J., dissenting) (noting that "[i]t is true that the Court has on two occasions struck down as ex post

## V. ANALYSIS

The decision in *Carmell* was incorrect for three reasons. First, the majority incorrectly asserted that Texas Article 38.07 is a statute altering the sufficiency of the evidence needed to obtain a conviction.[262] Rather, Texas Article 38.07 functions as a rule of witness competency and is not ex post facto as such under the principles of *Calder*.[263] Second, the Court in *Carmell* relied too heavily on Sir John Fenwick's case, cited in *Calder*, in reaching its holding.[264] Furthermore, the Court overstated the analogy between the facts of this ancient case and Carmell's situation.[265] Third, even if the majority were correct in its assertion that Texas Article 38.07 qualifies as an ex post facto law under the fourth *Calder* category, the majority ignored subsequent case law that effectively nullified that category.[266] The majority's reasoning further confuses the precedent to be applied in determining whether procedural laws violate the Ex Post Facto Clause by ignoring the formulation set forth in *Beazell* and adopted in *Collins*, a formulation that had made important strides toward eradicating such confusion.[267]

### A. SUFFICIENCY OF THE EVIDENCE OR WITNESS COMPETENCY PROVISION?

First, the majority's decision was incorrect because Justice Stevens incorrectly asserted that Texas Article 38.07 is a rule altering the sufficiency of the evidence needed to obtain conviction. Instead, Texas Article 38.07 functions as a law of witness competency and credibility.[268] The majority's reasoning focused

---

facto the retroactive application of rules governing the functioning of the criminal trial process—but both decisions have since been overruled").

[262] *See id.* at 1648 (Ginsburg, J., dissenting) (arguing that the Court's "sufficiency of the evidence label . . . will not stick").

[263] *See id.* at 1649 (Ginsburg, J., dissenting) (reasoning that "the corroboration requirement of Article 38.07 is functionally identical to a conditional rule of witness competency").

[264] *See id.* at 1629 (turning to a lengthy discussion of Fenwick's case for "guidance").

[265] *See id.* at 1654 (Ginsburg, J., dissenting) (reasoning that the facts of the petitioner's case do not parallel the facts of Fenwick's case "300 years earlier").

[266] *See id.* at 1651 (Ginsburg, J, dissenting) (reasoning that "a strong case can be made that *Collins* pared the number of *Calder* categories down to three, eliminating altogether the fourth category on which the Court today so heavily relies").

[267] *See* Collins v. Youngblood, 497 U.S. 37, 45 (1990) (noting that prior precedent had "imported confusion into the interpretation of the Ex Post Facto Clause").

[268] *See supra* note 9.

on the notion that "requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely 'less testimony required to convict.'"[269] As such, the majority argued that Texas Article 38.07 is a sufficiency of the evidence rule that "governs the sufficiency of [the] facts for meeting the burden of proof."[270]

The majority's reasoning neglects one fundamental fact about Article 38.07: it does not alter the reasonable doubt burden that the prosecution must carry in order to obtain a conviction.[271] As the dissent pointed out, "[u]nder both the old and the new versions of the statute, the applicable standard is proof beyond a reasonable doubt."[272] The majority insists that requiring only the victim's testimony, rather than the victim's testimony plus corroborating evidence, lowers the bar on what the prosecution has to overcome to meet this burden, but this reasoning is flawed.[273] The prosecution is not *required* to produce the victim's testimony in order to obtain a conviction; the prosecution may put any evidence it chooses before the jury, and as long as the prosecution meets its burden of proof, the conviction will stand.[274] Texas Article 38.07 does not alter that fundamental burden of proof.[275]

Moreover, even if the prosecution were to produce only the testimony of a victim who did meet the requirements under Article 38.07, that testimony would *not* be sufficient unless the

---

[269] Carmell v. Texas, 120 S. Ct. 1620, 1631 (2000).

[270] *Id.* at 1639.

[271] *See id.* at 1647 (Ginsburg, J., dissenting).

[272] *Id.* (Ginsburg, J., dissenting).

[273] *See* Adler, *supra* note 17, at 1204-06 (explaining that accomplice corroboration statutes, which are equivalent to Texas Article 38.07 in that they require corroborating evidence to "sustain a conviction," do not alter the ultimate burden of proof for the trier of fact. Rather, they set out a threshold determination for the judge of whether the testimony can be put before the trier of fact).

[274] *See* Adler, *supra* note 17, at 1204-05. The author explains that accomplice corroboration laws require a judge to make a preliminary determination of whether the evidence may be put before the trier of fact. If the judge determines that there is sufficient corroborating evidence, the testimony may be put before the trier of fact. If there is not sufficient corroborating evidence, the witness may not testify. Texas Article 38.07 functions as an accomplice corroboration law does: so long as the judge determines that there is corroborating evidence, the testimony is put before the trier of fact, but the ultimate issue of whether the prosecution has met its burden of proof remains a question for the trier of fact.

[275] *See Carmell,* 120 S. Ct. at 1647 (Ginsburg, J., dissenting).

prosecution could convince a jury of the defendant's guilt beyond a reasonable doubt.[276] Thus, 38.07 in no way affects the burden that the prosecution must meet or the amount of evidence required to meet it.[277]

In fact, Article 38.07 functions exactly as a law of witness competency does, making Carmell's case analogous to *Hopt*.[278] As the dissent correctly explained, the *policies* behind 38.07 and laws of witness competency are the same: in the passage of each of these types of laws, the legislature expresses concern about the credibility of a certain class of witnesses based on the special circumstances involved in their case.[279] The laws *function* in the same manner as the dissent argues, because "if the victim is of a certain age, the jury, in assessing whether the prosecution has met its burden of demonstrating guilt beyond a reasonable doubt, must give no weight to her testimony unless that testimony is corroborated."[280] Likewise, a law of witness competency provides that the testimony of a certain class of witnesses is to be given no weight by the jury. Because 38.07 operates as a rule of witness competency, the dissent argued, it is analogous to *Hopt*, and is not ex post facto because it "simply enlarge[s] the class of persons who may be competent to testify in criminal cases."[281]

The dissent's analysis of 38.07 as a law of witness competency is preferable to the majority's analysis of it as a sufficiency of the evidence rule, because the dissent's view comports best with the purposes of the Ex Post Facto Law Clause.[282] The ex post facto ban assures citizens fair warning and reasonable reliance and prohibits the legislature from improperly interfering in the judicial process.[283] Article 38.07, like an accomplice corroboration statute, is consistent with these goals and purposes.[284]

---

[276] *See id.*

[277] *See* Adler, *supra* note 17.

[278] *See id.*

[279] *See Carmell,* 120 S. Ct. at 1645 (Ginsburg, J., dissenting) ("Texas's requirement of corroboration or outcry, like similar provisions in other jurisdictions, is premised on a legislative judgment that accusations made by sexual assault victims above a certain age are not independently trustworthy").

[280] *Id.* (Ginsburg, J., dissenting).

[281] *Id.* at 1653 (Ginsburg, J., dissenting).

[282] *See* Adler, *supra* note 17, at 1219; *see also supra* Section IIA, discussion of the three main purposes for the Ex Post Facto Clause.

[283] *See id.*

[284] *See id.*

Although a citizen may not be aware of the evidentiary protections provided in Article 38.07, she has constructive notice that sexual contact with a minor is a criminal offense.[285] Likewise, a citizen may not be aware of the laws requiring accomplice corroboration, but she has constructive notice about the criminal nature of her actions.[286]

Moreover, an accomplice corroboration requirement is not a rule that is meant to induce reliance on the part of the general public, and neither is Article 38.07.[287] Finally, Texas Article 38.07, like a rule of accomplice corroboration, is not a "capricious or vindictive legislative action that is repugnant to the ex post facto prohibition."[288] Article 38.07 and laws of accomplice corroboration do not "single out" any particular person or group, and are not used as a means of political oppression or retribution.[289]

## B. THE MAJORITY'S ANALYSIS OF FENWICK'S CASE

Second, the majority's decision is incorrect because Justice Stevens relied too heavily on Sir John Fenwick's case, cited in *Calder*, in reaching the conclusion that Texas Article 38.07 qualified as an ex post facto law under the fourth *Calder* category.[290] The majority explained that an analysis of Fenwick's case would be helpful because it is cited in *Calder* as an example of the fourth category of ex post facto laws.[291] The majority devoted a substantial portion of the opinion to discussing the facts of Fenwick's case and to analogizing those facts to Carmell's situation.[292] Ultimately, the Court concluded that Texas Article

---

[285] *See id.* (noting that a defendant is "on constructive notice of the criminal nature of her action and the degree to which society would seek to punish it").

[285] *See id.*

[287] *See id.*

[288] *Id.*

[289] *Id;* *see also supra* Section VA (discussion of the egregious nature of laws that single out individuals).

[290] *See supra,* Section IVA, at 38-39 (discussion of the majority's analysis of Fenwick's case).

[291] *See Carmell,* 120 S. Ct. at 1629 ("Justice Chase and Wooddeson both cited several examples of ex post facto laws, and, in particular, cited the case of Sir John Fenwick as an example of the fourth category. To better understand the type of law that falls within that category, then, we turn to Fenwick's case for preliminary guidance").

[292] *See supra* Section IVA (discussion of majority's analogy between *Fenwick* and *Carmell*); *see also supra* Section IIB (discussion of the facts of Fenwick's case).

38.07 fell under the fourth *Calder* category of ex post facto laws because the facts in *Carmell* paralleled those in Fenwick's case.[293]

Although Justice Chase did cite to Fenwick's case as an example of the fourth category, Fenwick's case was *never* discussed again by the Supreme Court, not even in those cases that involved a procedural rule that would come under the fourth category of *Calder*.[294] If Fenwick's case were considered an important guiding principle in a determination of ex post facto laws under the fourth *Calder* category, the Court would have used it as such in the precedent cases addressing procedural statutes.[295] Additionally, Fenwick's case is mentioned only briefly in *Calder*[296] and is cited as an example of more than one category of ex post facto laws.[297] As the dissent noted, the four-category formulation in *Calder* is itself only dictum.[298] The majority made no attempt to explain why Fenwick's case should be resurrected as a "guide" for determining if procedural laws were ex post facto.[299] In short, the majority diverged from the reasoning of well-establish precedent in using Fenwick's case, a case mentioned only briefly in *Calder* and never again, as a major determinant that Texas Article 38.07 violated the Ex Post Facto Clause of the Constitution.[300]

---

[293] *See Carmell*, 120 S. Ct. at 1632; *see also supra* Section IV.A. (discussion of majority's reliance on *Fenwick*).

[294] *See Cummings*, 71 U.S. 277; Kring v. Missouri, 107 U.S. 221 (1883); Hopt, 110 U.S. 574; Thompson v. Missouri, 171 U.S. 380 (1898); Beazell v. Ohio, 269 U.S. 167 (1925); Collins v. Youngblood, 497 U.S. 37 (1990).

[295] *See Cummings*, 71 U.S. 277; *Kring*, 107 U.S. 221; *Hopt*, 110 U.S. 574; *Thompson*, 171 U.S. 380; *Beazell*, 269 U.S. 167; *Collins*, 497 U.S. 37. None of these cases make any reference to *Fenwick's* example.

[296] *See Calder*, 3 U.S. at 389 (Fenwick's case is mentioned in a footnote. The entire text of the footnote reads: "The case of Sir John Fenwick, in 1696").

[297] *See id.* (*citing* Fenwick's case for two propositions, "declaring acts to be treason, which were not treason, when committed," and violating "the rules of evidence (to supply a deficiency of legal proof) by admitting one witness, when the exiting law required two").

[298] *See Carmell*, 120 S. Ct. at 1651 (Ginsburg, J., dissenting) (noting that Justice Chase's formulation was dictum, because *Calder* involved a civil statute).

[299] *See id.* at 1629.

[300] *See id.* at 1629-1632 (whereas *Calder* mentioned Fenwick's case in passing, the majority in *Carmell* makes it a central focus of inquiry; the majority fully discusses the facts of the case, analogizes them to Carmell's case, and determines that the two fact patterns are so similar, that Texas Article 38.07 must fall under the fourth category of *Calder*); *Id.* at 1641 (in responding to the dissenting opinion, as well, the majority relies on Fenwick's case as "the guide").

Furthermore, even if the majority were correct in relying on Fenwick's case to invalidate Texas Article 38.07, Justice Stevens overstated the analogy between the facts of Fenwick's case and the facts of Carmell's.[301] Most importantly, Fenwick's case involved a Bill of Attainder; the Parliament passed a special piece of legislation targeted at one individual and one individual alone: Fenwick.[302] No such situation existed in Carmell's case. In *Carmell*, the legislature passed a general piece of legislation targeting criminal procedure in *all* sex offense cases.[393] The distinction between these two types of legislative actions is paramount;[304] the Framers regarded Bills of Attainder as especially egregious to a fundamental notion of justice, and as such, implicates all of the reasons the framers promulgated the Ex Post Facto Clause.[305] A Bill of Attainder, the Court argued in *Cummings*, usurps the judicial function and removes all of the protections of trial from the criminal defendant.[306]

In contrast, Texas Article 38.07 does not implicate the concerns of the Ex Post Facto Clause.[307] Texas Article 38.07 was not

---

[301] *See id.* at 1631-32 (the majority noted that "Indeed, the circumstances of petitioner's case parallel those of Fenwick's case 300 years earlier").

[302] *Id.* at 1630; *See Cummings*, 71 U.S. at 323 (noting that bills of attainder "are generally directed against individuals by name," and that "[b]ills of this sort . . . have been most usually passed in England in times of rebellion, or gross subserviency to the crown, or of violent political excitements; periods, in which all nations are most liable (as well the free as the enslaved) to forget their duties, and to trample upon the rights and liberties of others").

[303] *See* TEX. CODE CRIM. P. ANN. art. 38.07 (West 2000); *see also Carmell*, 120 S. Ct. at 1624.

[304] *See Calder*, 3 U.S at 390. If Justice Chase cited Fenwick's case because of the particularly egregious act of Parliament in altering the rules of evidence *to target one individual*, than the *Carmell* Court's analogy fails. Texas Article 38.07, unlike the law in Fenwick's case, was not amended in order to target an individual.

[305] *See Cummings*, 71 U.S. at 323 (explaining the special nature of Bills of Attainder: "In these cases the legislative body, in addition to its legitimate functions, exercises the powers and office of judge; it assumes, in the language of the text-books, judicial magistracy; it pronounces upon the guilt of the party, without any of the forms or safeguards of trial; it determines the sufficiency of the proofs produced, whether conformable to the rules of evidence or otherwise; and it fixes the degree of punishment in accordance with its own notions of the enormity of the offense"); *see also* Mark Strasser, *Ex Post Facto Laws, Bills of Attainder, and the Definition of Punishment: on Doma, the Hawaii Amendment, and Federal Constitutional Constraints*, 48 SYRACUSE L. REV. 227, 238-39 (1998).

[306] *See id.*

[307] *See Carmell*, 120 S. Ct. at 1650-51 (Ginsburg, J., dissenting) (noting that Texas Article 38.07 does not implicate either of two important purposes for which the Ex

passed with Scott Leslie Carmell in mind but as a general meas-
ure, affecting all citizens. As the dissent argued, "the amend-
ment of Texas 38.07 simply brought the rules governing certain
victim testimony in sexual offense prosecutions into conformity
with Texas law governing witness testimony generally."[308]
Moreover, Texas Article 38.07 removed none of the protections
of a criminal trial; Carmell received a full trial, with benefit of
counsel, before a jury, and he was presumed innocent until the
prosecution could prove, beyond a reasonable doubt, that he
had committed the offenses for which he was charged. Because
Fenwick's case involved a Bill of Attainder, it is inherently dif-
ferent from Carmell's case; whereas Fenwick was the target of
"vindictive" legislation, aimed specifically at him, Carmell was
simply subjected to a general procedural rule applied to all
criminal defendants in sex offense cases.

## C. THE MAJORITY'S TREATMENT OF *BEAZELL* AND *COLLINS*

Third, the majority's decision was incorrect because even if
Justice Stevens was correct in his assertion that Article 38.07
meets the definition set forth in the fourth *Calder* category, the
majority ignored precedent that effectively nullified that cate-
gory.[309] The majority argued that *Collins* was at best "cryptic" on
the issue of whether the fourth *Calder* category was still good
law.[310] Further, the majority argued that if *Collins* intended to
nullify the fourth category of *Calder*, "we think it strange that it
would have done so in a footnote."[311] These arguments avoid
the ultimate conclusion reached by *Collins*.[312] First, *Collins* paid
deference to the four categories of *Calder*, but only as a general
*principle*, and the Court further explained that the *Beazell* defini-
tion was the one best suited to the original understanding of the

---

Post Facto clause was promulgated: "to assure that legislative Acts give fair warning of
their effect and permit individuals to rely on their meaning until explicitly changed,"
and to "[restrict] governmental power by restraining arbitrary and potentially vindic-
tive legislation").

[308] *Id* at 1651 (Ginsburg, J., dissenting).

[309] *See Collins*, 497 U.S. at 37.

[310] *See Carmell*, 120 S. Ct. at 1635 (noting that "it seems most accurate to say that
*Collins* is rather cryptic").

[311] *Id.* at 1636.

[312] It is interesting to note that *Collins* was authored by Chief Justice Rehnquist, who
*dissented* in *Carmell*. Wouldn't Chief Justice Rehnquist, the author of *Collins*, be in the
best position to determine if the Court meant to nullify the fourth principle of *Calder?*
Of course.

framers.[313] The majority is correct that the *Collins* Court mentioned *Beazell's* omission of the fourth *Calder* category in a footnote, but the fact that the Court did so does not necessarily mean that it was any less serious about adopting the *Beazell* definition. It is important to note that directly after the Collins Court explained the omission, it adopted the *Beazell* definition as "faithful to our best knowledge of the original understanding of the Ex Post Facto Clause."[314]

Most importantly, in analyzing the facts involved in *Collins,* the Court did *not* apply the four categories of *Calder;* the Court ultimately applied the *Beazell* formulation in determining that the Texas statute did not offend the Ex Post Facto Clause, even though the statute was a rule of procedure.[315] The majority in *Carmell* ignored the fact that the *Collins* Court ultimately applied the Beazell formulation, and ignored the fact that the *Collins* Court did so with a rule of procedure, one which typically should have been subjected to analysis under the fourth category of *Calder.*[316] The *Collins* Court's ultimate application of the *Beazell* formulation as a pragmatic matter, along with its ringing endorsement of the *Beazell* formulation in direct comparison with the four *Calder* categories (and the explicit recognition that *Beazell* omitted the fourth category) lead to one inescapable conclusion: the *Collins* court effectively nullified the fourth category of *Calder,* and replaced the four-category *Calder* formulation with the more general formulation provided in *Beazell.*[317]

---

[313] *See Collins,* 497 U.S. at 42-43.

[314] *Id.*

[315] *See id.* at 51. The Court applied the Beazell test in reaching its holding: "The Texas statute allowing reformation of improper verdicts does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed. Its application to respondent therefore is not prohibited by the Ex Post Facto Clause."

[316] *See Carmell,* 120 S. Ct. at 1635-36.

[317] *See* Neil Colman McCabe and Cynthia Ann Bell, *Ex Post Facto Provisions of State Constitutions,* 4 EMERGING ISSUES ST. CONST. L. 133, 134-35 (1991) (explaining that the "four categories . . . have not stood the test of time," and that *Collins* Court narrowed the scope of the Ex Post Facto Clause, and curtailed the fourth category); Victoria L. Miller, *VII. Criminal Procedure: Trial and Post-trial Issues,* 29 RUTGERS L.J. 1257, 1288 (1998) (acknowledging that the *Collins* Court adopted the *Beazell* formulation for the definition of ex post facto laws, and acknowledging that the *Beazell* formulation omitted the fourth category of *Calder);* Matteo, *supra,* note 25, at 595.

Thus, *Carmell* majority's response that *Collins* is "cryptic" is unpersuasive.

## VI. CONCLUSION

The Supreme Court's decision in *Carmell* was incorrect for three reasons. First, the majority erroneously concluded that Article 38.07 was a rule affecting the sufficiency of the evidence needed to convict.[318] In reality, 38.07 does not affect the ultimate sufficiency of the evidence standard: the prosecution's burden of proving its case beyond a reasonable doubt.[319] Additionally, 38.07 functions exactly like a rule of witness competency, the alterations of which were upheld in *Hopt*.[320] Second, the majority in *Carmell* relied too heavily on a three-hundred-year-old case that was mentioned only briefly in *Calder v. Bull*, and never again, even in cases that implicated *Calder's* fourth principle.[321] In addition, the majority's reliance on that case was misplaced; the facts surrounding Fenwick's execution are inherently different from the facts in *Carmell*.[322] Third, even if the majority were correct in its assertion that 38.07 fell under the fourth category of *Calder*, the majority ignored important precedent that effectively nullified that category.[323] As a result, the majority frustrated what the *Collins* Court sought to achieve: eradication of the confusion surrounding whether procedural rules violated the Ex Post Facto Clause.[324] Thanks to the *Carmell* Court, the situation is now more confused than ever.

Danielle Kitson

---

[318] *See supra* notes 254-55; *see also supra* Section VB (discussion of Article 38.07 as a law of witness competency).

[319] *See id.*

[320] *See supra* note 94.

[321] *See supra* Section VA (discussion of the majority's reliance on Fenwick's case).

[322] *See id.*

[323] *See supra* note 310; *see also supra* Section VC (discussion of the abandonment of *Calder's* fourth category.

[324] *See supra* note 260.

Not every change in a convicted person's situation violates the Ex Post Facto Clause. A law implicates the Ex Post Facto Clause only if it criminalizes conduct that was not a crime when it was committed, increases the punishment for a crime beyond what it was at the time the act was committed, or deprives a person of a defense available at the time the act was committed. Collins v. Youngblood, 497 U.S. 37, 42-43 (1990). Courts have held that legislation may lawfully impose new requirements on convicted persons if the statute's 'overall design and effect' indicates a 'non-punitive intent.' United States v. Huss, 7 F.3d 1444, 1447 (9th Cir.'93).

 Cornell University Law School                                    Search Cornell

# Legal Information Institute [LII]     SUPPORT LII GIVE NOW

OPEN ACCESS TO LAW SINCE 1992

 Search all of LII...  Go

ABOUT LII  /  GET THE LAW  /  FIND A LAWYER  /  LEGAL ENCYCLOPEDIA  /  HELP OUT

## Supreme Court    ABOUT SEARCH SUBSCRIBE LIIBULLETIN PREVIEWS

**SUPREME COURT TOOLBOX**

Become an LII sponsor

**STAY INVOLVED**

- LII Announce Blog
- LII Supreme Court Bulletin
- MAKE A DONATION
- CONTRIBUTE CONTENT
- BECOME A SPONSOR
- GIVE FEEDBACK

All lawyers

Become an LII sponsor

| Collins v. Youngblood (89-742), 497 U.S. 37 (1990) | | |
|---|---|---|
| Concurrence | Syllabus | Opinion |
| HTML version WordPerfect version | HTML version WordPerfect version | HTML version WordPerfect version |

### Syllabus

*NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Lumber Co., 200 U.S. 321, 337.*

### Syllabus

## COLLINS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION v. YOUNGBLOOD

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**No. 89-742. Argued March 19, 1990 — Decided June 21, 1990**

Respondent was convicted in a Texas state court of aggravated sexual assault and sentenced to life imprisonment and a $10,000 fine. After his conviction and sentence were affirmed on direct appeal, he applied for a writ of habeas corpus in state court, arguing that Texas law did not authorize both a fine and prison term for his offense, and thus that his judgment and sentence were void and he was entitled to a new trial. The court, bound by a State Court of Criminal Appeals' decision, recommended that the writ be granted. Before the writ was considered by the Court of Criminal Appeals however, a new statute was passed allowing an appellate court to reform an improper verdict assessing a punishment not authorized by law. Thus, the Court of Criminal Appeals reformed the verdict by ordering that the fine be deleted and denied the request for a new trial. Arguing that the new Texas law's retroactive application violated the *Ex Post-Facto* Clause of Art. 1, 10, respondent filed a writ of habeas corpus in Federal



District Court, which was denied. The Court of Appeals reversed. Relying on the statement in *Thompson* v. *Utah*, 170 U.S. 343, that retroactive procedural statutes violate the *Ex Post-Facto* Clause unless they "leave untouched all the substantial protections with which existing law surrounds the ... accused," the court held that respondent's right to a new trial under former Texas law was a "substantial protection."

*Held*:

1. Although the rule of *Teague* v. *Lane*, 489 U.S. 288 — which prohibits the retroactive application of new rules to cases on collateral review — is grounded in important considerations of federal-state relations, it is not jurisdictional in the sense that this Court, despite a limited grant of certiorari, *must* raise and decide the issue *sua sponte*. Since Texas has chosen not to rely on *Teague*, the merits of respondent's claim will be considered. P. 3.

2. The application of the Texas statute to respondent is not prohibited by the *Ex Post-Facto* Clause. Pp. 3-14.

(a) The definition of an *ex post-facto* law as one that (1) punishes as a crime an act previously committed, which was innocent when done, (2) makes more burdensome the punishment for a crime, after its commission, or (3) deprives one charged with a crime of any defense available according to law at the time when the act was committed, *Beazell* v. *Ohio*, 269 U.S. 167, is faithful to this Court's best knowledge of the original understanding of the Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts. Respondent concedes that Texas' statute does not fall within the *Beazell* categories, since it is a procedural change in the law. However, he errs in arguing that this Court's decisions have not limited the Clause's scope to those categories, but have stated more broadly that retroactive legislation contravenes the Clause if it deprives an accused of a "substantial protection" under law existing at the time of the crime, and that the new trial guaranteed by Texas law is such a protection. When cases have described as "procedural" those changes that do not violate the Clause even though they work to the accused's disadvantage, see, *e.g.*, *Beazell, supra*, at 171, it is logical to presume that "procedural" refers to changes in the procedures by which a criminal case is adjudicated as opposed to substantive changes in the law. The "substantial protection" discussion in *Beazell, Duncan* v. *Missouri*, 152 U.S. 377, 382-383, and *Malloy* v. *South Carolina*, 237 U.S. 180, 183, has imported confusion into the Clause's interpretation and should be read to mean that a legislature does not immunize a law from scrutiny under the Clause simply by labeling the law "procedural." It should not be read to adopt without explanation an undefined enlargement of the Clause. Pp. 3-9.

(b) *Kring* v. *Missouri*, 107 U.S. 221, and *Thompson* v. *Utah*, *supra*,



are inconsistent with the understanding of the term "*ex post-facto law*" at the time the Constitution was adopted, rely on reasoning that this Court has not followed since *Thompson* was decided, and have caused confusion in state and lower federal courts about the Clause's scope. *Kring* and *Thompson* are therefore overruled. Pp. 9-14.

882 F. 2d 956, reversed.

*Rehnquist, C.J.*, delivered the opinion of the Court, in which *White, Blackmun, O'Connor, Scalia,* and *Kennedy, JJ.*, joined. *Stevens, J.*, filed an opinion concurring in the judgment, in which *Brennan* and *Marshall, JJ.*, joined.

---

ABOUT LII        CONTACT US        ADVERTISE HERE        HELP        TERMS OF USE        MORE

$$\left[\text{LII}\right]$$